**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 15, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BOBBY DALE SIMMONS,

    Defendant - Appellant.

No. 24-6077
(D.C. No. 5:22-CR-00255-G-1)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Bobby Dale Simmons pleaded guilty to unlawful firearm possession and was sentenced in district court. In determining Simmons' Sentencing Guidelines imprisonment range, the district court applied a four-level enhancement to his offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because it found Simmons possessed the firearm in connection with another felony offense. On appeal, Simmons argues that the enhancement was improperly applied because there was no coincident felony offense.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We **AFFIRM**.  Simmons fails to show the district court plainly erred in applying the enhancement because his prior state drug convictions, listed in the adopted Final Presentence Report, elevate his drug possession charge from a misdemeanor to a felony pursuant to 21 U.S.C. § 844.

## I.    Background

### A.    *Factual Background*

Oklahoma City Police Department responded to a reported disturbance at a hotel.  They observed Simmons exit the hotel carrying a black case that they suspected held a handgun.  He placed the case in his vehicle as OCPD officers tried to detain him.  While taking Simmons into custody, the officers saw a revolver on the driver's side floorboard in plain sight.  A search of the vehicle uncovered three firearms, ammunition, and small quantities of various drugs.  The drugs included: (1) 4.41 grams total package weight of methamphetamine; (2) 2.40 grams total package weight of marijuana; (3) approximately 14.32 grams total package weight of a light brown powdery substance (not tested due to possibility of fentanyl); (4) five fentanyl patches; and (5) 19 small blue pills marked "M30" identified on pill identifier as Oxycodone and one unknown pink pill in the shape of an "X."  Also found in the vehicle were numerous items consistent with drug distribution, including scales, glass pipes, torches, and small plastic baggies.  OCPD officers identified Simmons as a convicted felon.

2

Simmons was arrested and charged in the Western District of Oklahoma for one count of unlawfully possessing firearms under 18 U.S.C. § 922(g). He pleaded guilty to the single-count indictment without a plea agreement.

While on bond, however, Simmons was again arrested in relation to a shoplifting investigation. During his arrest, officers found drugs in his pocket. The drugs included: (1) two suboxone pills; (2) 0.8 grams of psilocybin; (3) 8.1 grams of methamphetamine; (4) 2.7 grams of cocaine; and (5) 8.2 grams of marijuana. A search of his car revealed a semi-automatic firearm and ammunition, as well as a pipe, digital scales, and brass knuckles.

### B.    *Simmons' Final PSR and Sentencing Proceeding*

Simmons' Final PSR included a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. Specifically, the relevant paragraph read: "As detailed in the offense conduct, the defendant possessed a firearm *in connection with the felony offense of possession of controlled dangerous substance* including methamphetamine and fentanyl; therefore, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), a four-level increase is warranted." Vol. III, 35 (emphasis added) (Paragraph 24(a)). No objections were made to this sentencing enhancement before or at the sentencing proceeding.

At sentencing, the district court began by resolving the remaining objections to the Final PSR. Again, none pertained to the four-level enhancement. The court then calculated Simmons' Guidelines imprisonment range. But it did not make additional, explicit findings as to the enhancement apart from its general adoption of the Final

3

PSR. *See* Vol. III, 142–43. In fact, the court did not specify the exact felony offense, nor did it cite any state or federal statute in applying the enhancement. Simmons' Guidelines imprisonment range was calculated to be 120 to 150 months based on his total offense level of 27 and his criminal history score of 12 (criminal history category of V).[1] A statutory maximum of 10 years applied, however, and thus Simmons' Guidelines imprisonment recommendation was capped at 120 months.

Relying on the 18 U.S.C. § 3553(a) factors, the court subsequently presented an individualized assessment of Simmons' history and characteristics and the instant offense to impose an appropriate sentence. Ultimately, the district court varied downward and sentenced Simmons to 96 months of imprisonment and two years of supervised release. The court expressed concern about Simmons' criminal history and drug possession, but recognized his education, military service, completion of a mental intervention program, and the fact that he had no criminal convictions in the five years leading up to the instant offense.

## II.    Discussion

Simmons appeals his sentence. He argues the felony offense requirement was not satisfied for the sentencing enhancement because: (1) the Final PSR referred to Oklahoma's simple possession statute, a misdemeanor, in its reasoning for the enhancement; and (2) his drug possession offense could not have been elevated from

---

[1] Without the four-level enhancement, Simmons' offense level would have been 23. The Guidelines range for an offense level of 23 and a criminal history category of V is imprisonment of 84 to 105 months.

a misdemeanor to a felony under 21 U.S.C. § 844 because the categorical approach plainly applies to the statute.

### A. Standard of Review

Simmons concedes that the four-level enhancement was not challenged below and thus plain error review applies. We find plain error only when there is: "(1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007) (citation omitted). Failure to satisfy even one of the requirements is fatal to Simmons' claim.

### B. No Plain Error: 21 U.S.C. § 844

We see no error in the district court's application of the sentencing enhancement, much less a plain one. The adopted Final PSR included Simmons' prior drug-related misdemeanors, which enhance his instant drug possession from a misdemeanor to a felony under 21 U.S.C. § 844. We do not agree with Simmons that the categorical approach plainly applies to the federal statute.

Under federal law, simple possession of drugs—though generally a misdemeanor under Oklahoma and federal statute—becomes a felony offense when committed after a prior drug conviction that is final under state law. *See* 21 U.S.C. § 844(a). The statute provides:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . . Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, *except that if he*

5

> *commits such offense after* a prior conviction under this subchapter or subchapter II, or *a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final*, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years . . . .

*Id.* (emphases added).

To begin, Simmons argues we cannot rely on 21 U.S.C. § 844 because the district court considered only Oklahoma's simple possession statute in applying the enhancement. Specifically, Simmons underscores that Paragraph 24(a) of the Final PSR used the term *controlled dangerous substance*, a term that he claims can only refer to the state statute.[2] Aplt. Br. 8–9 (citing OKLA. STAT. ANN. tit. 63, § 2-101 to § 2-1101). But the Final PSR did not cite or limit its analysis of the enhancement to only Oklahoma's simple possession statute in justifying the enhancement, nor did it use the term, "simple." In other words, the text of the Final PSR does not require nor restrict us from relying on only one, or even a specific, authority. Rather, we read Paragraph 24(a) to explain that Simmons' possession of *controlled dangerous substances* under Oklahoma law is to be heightened from a misdemeanor to a felony under § 844 due to Simmons' prior drug-related criminal history. To assume the Final PSR was *only* referring to the Oklahoma statute, and that it is mutually

---

[2] OKLA. STAT. ANN. tit. 63, § 2-101 ("'Controlled dangerous substance' means a drug, substance or immediate precursor in Schedules I through V of the Uniform Controlled Dangerous Substances Act or any drug, substance or immediate precursor listed either temporarily or permanently as a federally controlled substance."). 21 U.S.C. § 844 similarly uses the term, *controlled substance*. 21 U.S.C. § 802(6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter.").

exclusive with any reliance or application of the federal statute, is too rigid of an interpretation that is unsupported by the record.[3]

We find 21 U.S.C. § 844 supports Simmons' enhancement. While it is true that Simmons was found possessing allegedly small quantities of drugs that amount only to misdemeanor quantities, Simmons' prior, final state drug convictions convert his misdemeanor offense to a felony. Simmons' long rap sheet includes numerous state drug-related offenses, which were explicitly listed in the Final PSR, unobjected to, and adopted by the court. *See* FED. R. CRIM. P. 32(i)(3) (a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact[.]"); *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) ("If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant and the government need not produce additional evidence in support of the admitted fact." (citation omitted)). The Final PSR stated, for example:

- In 2014, Simmons pleaded guilty and was sentenced to 12 years, suspended, with supervised probation for possession of a controlled dangerous substance with intent to distribute (1.65 grams of meth) in Oklahoma state court.

---

[3] Simmons argues that the government "implicitly asks for affirmance on alternative grounds" by relying on § 844. Aplt. Reply 10. He maintains that the government waived this argument because it did not "brief the appropriate standard of review." *Id.* at 5–6, 10. But for the reasons explained, we disagree that reliance on the federal statute is an *alternative* argument.

- In 2016, Simmons pleaded guilty and was admitted to mental health court

    for possession of a controlled dangerous substance (6.4 grams of meth) in

    Oklahoma state court.

Vol. III, 9–16.

Simmons counters that it was *plainly* erroneous to not apply the categorical

approach in determining whether a prior drug conviction constitutes a "drug,

narcotic, or chemical offense" under 21 U.S.C. § 844.[4]  Aplt. Br. 13.  He argues that

the state statutes under which he was previously convicted are *plainly* overbroad and

do not categorically match the federal definition to elevate his misdemeanor to a

§ 844 felony.

"An error is plain 'when it is contrary to well-settled law.'"  *United States v.*

*Thornton*, 846 F.3d 1110, 1118 (10th Cir. 2017) (quoting *United States v. Ruiz-Gea*,

340 F.3d 1181, 1187 (10th Cir. 2003)).  And "[f]or that inquiry[,] we look to whether

the Supreme Court or the Tenth Circuit has addressed the issue."  *Id.* (quoting

*Ruiz-Gea*, 340 F.3d at 1187).

Here, even if there was an error, it does not surpass the "plain" prong because

it is not clearly established that the categorical approach applies to § 844.  First,

Simmons notes there is no caselaw directly on point and instead leans on cases in

---

[4] "[W]hen the language of the enhancement confines the court's inquiry to the terms of the statute of conviction, courts employ the categorical approach, looking not to the particular facts of the prior conviction but to the terms of the underlying statute."  *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005) (cleaned up).

which the categorical approach was applied to allegedly analogous statutes.[5]  But those cases did not address the federal statute before us.  Second, an unpublished decision in this Circuit declined to hold that the district court should have applied the categorical approach to determine whether a defendant's Missouri drug offense was a "prior [drug] conviction" under 21 U.S.C. § 844(a).  *United States v. Shaw*, No. 22-3251, 2023 WL 3335596, at *2 (10th Cir. May 10, 2023).[6]  We clarified in *Shaw* that "§ 844(a) does not require the prior offense to be a violation of [the Federal Controlled Substance] Act.  It simply refers to 'any drug, narcotic, or chemical offense chargeable under the law of any State.'"  *Id.* at *4.  And tellingly, we found that "[a]lthough the categorical approach applies to serious drug offenses under the ACCA, it does not pertain to § 844(a)."  *Id.*  Simmons' arguments analogizing § 844 to seemingly parallel statutes is thus unconvincing and, even if the district court erred, it was not plain error given a persuasive circuit case on the matter.

---

[5] *See, e.g.*, *United States v. Cantu*, 964 F.3d 924, 926 (10th Cir. 2020) (applying the categorical approach to "determine whether a state [Oklahoma] conviction was for a serious drug offense" under the Armed Career Criminal Act); *United States v. Herrera-Roldan*, 414 F.3d 1238, 1241 (10th Cir. 2005) (applying a categorical approach to a Texas statute based on Guidelines text).

[6] Unpublished cases are not binding precedent, but we consider them for their persuasive value.  *See* FED. R. APP. P. 32.1; 10th Cir. R. 32.1.

Accordingly, we find the district court did not plainly err in applying the four-level sentencing enhancement to Simmons.[7]

## III.   Conclusion

It is a party's responsibility to timely seek clarification of a defendant's sentence, and to timely object or challenge sentencing adjustments or related facts in the Final PSR.  Even though we agree that the district court could have more thoroughly explained its reasoning, application of the sentencing enhancement did not amount to plain error.

---

[7] Based on the district court's findings, it is doubtful Simmons could demonstrate the alleged errors prejudiced him.  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) ("To meet this burden, the appellant must show 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" (citation omitted)); *United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir. 2008) ("The party that failed to raise the issue below bears the burden of establishing this probability." (citation omitted)).  In sentencing Simmons, the court recognized that he possessed, on two occasions, "paraphernalia used in the consumption and the sale of illegal drugs[,]" including pipes, scales, torches, small plastic baggies.  Vol. III, 31–32; Vol. II, 5–7 (Final PSR).  Relatedly, the Guidelines provide that "the enhancement applies 'in the case of a *drug trafficking offense* in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . .'", *United States v. Tobanche*, 643 F. App'x 781, 783 (10th Cir. 2016) (emphasis added) (unpublished), because "the presence of the firearm has the potential of facilitating another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(B)(ii).  Ultimately, we do not reach the question of whether there is a reasonable probability the sentencing enhancement would have been applied to Simmons regardless of the alleged errors based on the adopted facts suggesting he intended to distribute drugs—even so, Simmons cannot satisfy the second prong of the plain error standard.

Thus, for the foregoing reasons, we affirm.[8]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[8] Simmons argued in his appellate brief, for preservation purposes only, that his conviction must be vacated because 18 U.S.C. § 922(g)(1) is plainly unconstitutional, both on its face and as applied to him.  While his appeal was pending, we clarified in *Vincent v. Bondi* that § 922(g)(1) is constitutional under the Second Amendment "without drawing constitutional distinctions based on the type of felony involved."  127 F.4th 1263, 1266 (10th Cir. 2025) (citations omitted). Simmons therefore cannot demonstrate plain error as to his preserved argument.

24-6077, *United States v. Simmons*

**MORITZ**, Circuit Judge, dissenting.

The majority concludes that Simmons qualifies for a four-level enhancement under United States Sentencing Guidelines § 2K2.1(b)(6)(B) because he possessed a firearm in connection with a felony. Specifically, the majority concludes that Simmons committed federal felony drug possession, violating 21 U.S.C. § 844. But there's a problem with that view: the district court never specified which felony justifies the enhancement. The district court adopted the presentence investigation report (PSR) in full without directly addressing the enhancement. And the PSR—the only place in the record that discusses the enhancement—never mentions § 844.

The PSR recommended that Simmons receive a four-level enhancement for possessing "a firearm in connection with the felony offense of possession of controlled dangerous substance[s,] including methamphetamine and fentanyl." R. vol. 2, 35. The majority reads this sentence "to explain that Simmons'[s] possession of controlled dangerous substances under Oklahoma law is to be heightened from a misdemeanor to a felony under § 844 due to Simmons'[s] prior drug-related criminal history." Maj. Op. 6 (cleaned up). That's not a reading of the PSR—that's conjuring a felony from thin air.

I would remand this case for the district court to explain which felony it used to apply the enhancement. The majority's use of § 844 makes a remand all the more necessary because the one hint that the PSR *does* provide does not point to § 844. The parties agree that the PSR's use of the phrase "the felony offense of possession of controlled dangerous substance[s]" references *Oklahoma* law. Indeed, Oklahoma's drug

laws appear in its "Uniformed Controlled Dangerous Substances Act." Okla. Stat. tit. 63, ch. 2. And there's a fatal flaw with invoking Oklahoma's drug laws as the predicate felony for the enhancement: drug possession is a misdemeanor under Oklahoma law, not a felony. Okla. Stat. tit. 63 § 2-402(A)(1) ("It shall be unlawful for any person knowingly or intentionally to possess a controlled dangerous substance."); *id.* § 2-402(B)(1) ("Any person who violates this section is guilty of a misdemeanor punishable by confinement for not more than one . . . year.").

So if the district court invoked Oklahoma's drug-possession law to justify the enhancement—and the signs suggest that it did—then the district court erred. Such an error would be plain, too, given the plain language of the Oklahoma statute and the Guidelines' definition of a felony offense under § 2K2.1(b)(6)(B). *See United States v. Arellanes-Portillo*, 34 F.4th 1132, 1140 (10th Cir. 2022) ("Error may be plain based on the text of statutes or Guidelines."). Erroneously applying § 2K2.1(b)(6) also satisfies the third and fourth prongs of plain-error review because the four-level enhancement increased Simmons's Guidelines range from 84 to 105 months to 120 months, U.S.S.G. ch. 5 pt. A (sentencing table), causing obvious prejudice that requires reversal, *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014) ("[A]n obvious misapplication of the sentencing guidelines will usually satisfy the third and fourth elements of the plain[-]error test."); *id.* ("[W]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?").

2

Perhaps the district court erred. Perhaps the district court meant to invoke § 844. But rather than read the PSR to say something it doesn't, I would remand this case. I respectfully dissent.